UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**MOHAMMAD HARAKE**, on behalf of
himself and on behalf of all others
similarly situated,

Case No.:  8:19-cv-00243-CEH-CPT

      Plaintiff,

v.

**TRACE STAFFING SOLUTIONS, LLC,**

      Defendant.
_____/

**PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF SETTLEMENT AND NOTICE TO SETTLEMENT CLASS**

      Plaintiff, MOHAMMAD HARAKE (the "Named Plaintiff"), pursuant to Fed.R.Civ.P. 23, files this Unopposed Motion for Preliminary Approval of the Parties' Class Action Settlement (the "Motion"), with incorporated Memorandum of Law, and seeks an Order: (1) preliminarily approving the Settlement Agreement between the Named Plaintiff, the putative class, and Defendant; (2) preliminarily certifying a class for settlement purposes only; (3) approving the form and manner of notice to the class; (4) scheduling a fairness hearing for the final consideration and approval of the Parties' settlement; and, finally, (5) approving the settlement in a subsequent Order. A proposed Order is attached as Exhibit A.

      In support of the Motion, Plaintiff respectfully submits the following:

**I.**    **NATURE AND STAGE OF PROCEEDING.**

      **A.**    **The Litigation.**

      On or about January 8, 2019, Named Plaintiff filed this class action lawsuit (the "FCRA Litigation") asserting claims against Defendant under the Fair Credit Reporting Act on behalf of himself and on behalf of a proposed class of similarly situated individuals.  In the Complaint

Plaintiff alleged that Defendant willfully violated the disclosure and authorization provisions of the Fair Credit Reporting Act ("FCRA") in 15 U.S.C. § 1681b(b)(2)(A)(i)-(ii) by obtaining consumer/background reports on Plaintiff and prospective applicants for employment without first disclosing to them in a separate disclosure solely containing the statutory language, and included additional language not permitted under the FCRA.

This case has been extensively litigated since Defendant removed the Complaint from state to federal court on January 30, 2019. (Doc. 1). Plaintiff filed his Amended Complaint on February 20, 2019 (*see* Doc. 11), after which the parties engaged in extensive discovery, including written discovery, multiple depositions, and even third-party discovery. Defendant also filed a Motion to Dismiss (Doc. 13), which the Court denied on November 6, 2019. (Doc. 38). Plaintiff moved for class certification on August 8, 2019 (Doc. 25), and the parties mediated this case on a class basis on December 13, 2019. With the assistance of a highly-skilled mediator, Carlos J. Burruezo, the parties reached a class-wide resolution for which they now seek Court approval.

    **B.**    **Mediation And Settlement Agreement.**

The Parties engaged in extensive settlement negotiations for months prior to mediation. The Parties' continued efforts culminated in settlement of the class at mediation as defined by the Court, consisting of approximately 8,700 members. The Parties thereafter executed a Joint Stipulation of Class Settlement Agreement attached to this motion as Exhibit B (the "Agreement"). The settlement class is defined as follows:

- Background Check Class: All natural persons in the United States who: (1) were the subject of a consumer report that was procured by Trace Staffing (or caused to be procured by Trace Staffing) from Employment Screening Service for an employment purpose; (2) to whom Trace Staffing presented the disclosure form attached to Plaintiff's First Amended Class Action Complaint before procuring that report; (3) within two years of the filing of this lawsuit through the date the Class list is prepared;

The Agreement, subject to Court approval, provides for settlement under the following key terms:

- Defendant agrees to establish a gross Settlement Fund in the amount of $475,000.00;

- Every Settlement Class Member that timely submits a claim will receive a pro rata share of the Net Settlement Fund, calculated by dividing the Net Settlement Fund by the total numbers of individuals in the Settlement Class, and which the Parties currently estimate to be approximately $33.00;

- Any funds from Class Members who timely submit claims but do not timely cash their checks revert to a cy pres recipient, Bay Area Legal Services;

- Payment from the Settlement Fund of the cost of notice and administration, up to $25,000.00.

- Payment from the Settlement Fund of a service award to the named plaintiff approved by the Court, up to a maximum of $2,500.00; and

- Payment from the Settlement Fund of Class Counsel's attorney's fees in an amount of $158,331.25.

## II. THE SETTLEMENT SHOULD BE PRELIMINARILY APPROVED.

### A. The Law Governing Preliminary Approval.

The Eleventh Circuit has recognized that "[p]ublic policy strongly favors the pretrial settlement of class action lawsuits." *In re United States Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992). This Court has set forth the following process for preliminary approval of a class action settlement:

> Rule 23(e), Federal Rules of Civil Procedure, permits approval of a class action settlement if the settlement is "fair, reasonable, and adequate." *See Strube v. Am. Equity Inv. Life Ins. Co.,* 226 F.R.D. 688, 697 (M.D.Fla.2005) (Fawsett, J.). Approval is generally a two-step process in which a "preliminary determination on the fairness, reasonableness, and adequacy of the proposed settlement terms" is reached. *See* DAVID F. HERR, ANNOTATED MANUAL FOR COMPLEX LITIGATION § 21.632 (4th ed.2008). The factors considered are (1) the influence of fraud or collusion on the Parties' reaching a settlement, (2) "the likelihood of success at trial," (3) "the range of possible recovery," (4) "the complexity, expense[,] and duration of litigation," (5) "the substance and amount of opposition

3

to the settlement," and (6) "the stage of proceedings at which the settlement was achieved." *Bennet v. Behring Corp.,* 737 F.2d 982, 986 (11th Cir.1984). *Holman v. Student Loan Xpress, Inc.*, 2009 WL 4015573, at *4 (M.D. Fla. Nov. 19, 2009) (Merryday, J.).

The fact that the Parties agreed to a "claims-made" settlement and reversion to defendant does not render its terms unreasonable. *See, e.g., Gross v. Advanced Disposal Services, Inc.,* No. 8:17-cv-1154 (M.D.Fla.) (D.E. 94 and 100)(Judge Honeywell granted preliminary and final approval of claims-made settlement in nearly identical FCRA case); *Fosbrink*, No. 8:17-cv-1154 (M.D.Fla.) (D.E. 79 at ¶10); *Saccoccio*, 297 F.R.D. at 696 (overruling objections to claims-made process because "[t]here is nothing inherently suspect about requiring Class Members to submit claim forms in order to receive payment.") (*Atkinson v. Wal-Mart Stores, Inc.*, No. 08-cv-691-T-30TBM, 2011 WL 6846747, at *5 (M.D. Fla. Dec. 29, 2011) (approving claims-made settlement with full reversion).

### 1. The Settlement Agreement Is Not the Product of Fraud or Collusion.

In assessing this factor, courts must presume that no fraud or collusion occurred unless there is evidence to the contrary. *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 287 (W.D. Tex. 2007). There is no evidence of fraud or collusion here, as evidenced. The proposed settlement in the Agreement resulted from arm's length negotiations between Class Counsel and Defendant conducted by capable, experienced attorneys and with the assistance of a seasoned and respected mediator, Carlos J. Burruezo. *See, e.g., Gross v. Advanced Disposal Services, Inc.,* No. 8:17-cv-1154 (M.D.Fla.) (D.E. 94)("There is no evidence of any fraud or collusion with respect to the settlement. The litigation was contested from the onset, and settlement was only obtained after multiple mediation sessions and continued negotiations through an experienced and respected mediator.").

Courts have consistently held that the presence of an independent mediator negates any

suggestion of fraud or collusion. *See, e.g., Montoya v. PNC Bank, N.A.*, 2016 WL 1529902, at *8 (S.D. Fla. Apr. 13, 2016) (use of mediator indicates there is "no suggestion of fraud or collusion"); *Hall v. Bank of Am., N.A.,* 2014 WL 7184039, at *6 (S.D. Fla. Dec. 17, 2014). There was no fraud or collusion in reaching the Settlement. During this process, the Parties thoroughly evaluated their claims and defenses in order to negotiate what they believe is the most optimal settlement on behalf of the settlement class.

The absence of fraud and collusion is evidenced by a settlement reached after almost 12 months of litigation, significant motion practice, extensive written discovery and depositions, and a mediation session. Additionally, there is no evidence that Plaintiff sacrificed the interests of the Settlement Class for his own financial gain. Under the Agreement, Plaintiff will receive the same settlement payment as the other members of the Settlement Class. And, he only requests a modest service award of $2,500.00. Accordingly, the first factor supports approval of the settlement.

### 2. Litigating this Case Through Trial Would Be Complex, Expensive, and Time-Consuming.

Although the total expenses that the Parties will incur if this litigation progresses and the duration of the litigation, including the appellate process, cannot be predicted with certainty, Plaintiff and Defendant will vigorously advocate for their respective positions on various legal and factual issues, that will likely entail significant motion practice and possible trial. Defendant denies liability for any willful violations of the FCRA and asserted numerous affirmative defenses to Plaintiff's individual and alleged class claims.

Furthermore, if Plaintiff's Motion for Class Certification had been granted the Parties would have incurred significant expenses for decertification and likely appeal of the certification of the class; two issues where Plaintiff's and Defendant's positions differ. Trial and a potential of post-trial appeals further increases the costs and delay of litigation.

There is no reason to believe that issues raised before, during, or after a trial would be any less vigorously litigated by the Parties or less expensive and time-consuming to resolve. Absent settlement, the resolution of factual issues relevant to each Class Member's claims would result in protracted litigation. The proposed settlement will save considerable time and resources that would otherwise be spent litigating disputes resolved by the proposed settlement. Thus, this factor weighs in favor of approving the settlement proposed in the Agreement.

### 3. Settlement Class Counsel Has Documents and Other Information to Realistically Value the Claims.

The Parties possess "ample information with which to evaluate the merits of the competing positions." *Ayers v. Thompson,* 358 F.3d 356, 369 (5th Cir. 2004). Plaintiff has obtained sufficient discovery from Defendant and third parties to allow a well-informed and comprehensive settlement of the Class. For example, Plaintiff and Defendant have reviewed Defendant's records, deposition testimony from Defendant's CEO/corporate representative, the deposition testimony from the Cellular Sales Division Manager, Defendant's entire document production, along with third party discovery responses, for the relevant time period and determined that the Class consists of approximately 8,700 individuals. Defendant also identified and produced copies of the documents, policies, and procedures that pertain to the allegations in the Complaint.

In addition to the discovery described above, the Parties have extensively analyzed legal authorities regarding FCRA claims on a nationwide basis. Counsel for the Parties have discussed their claims and defenses with each other, and with the mediator. As such, the Parties believe that they have sufficient information to reach a fair, reasonable, and adequate settlement. The Agreement was negotiated based on the Parties' realistic, independent assessments of the merits of the claims and defenses in this case and should be approved.

### 4. Ultimate Success on the Merits of the Claims Is Uncertain Given the <u>Risks of Litigation</u>.

When evaluating a proposed class action settlement, the court must balance the benefits of a certain and immediate recovery through settlement against the inherent risks of litigation. *Reed v. General Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983). Here, recovery under the Agreement is favorable for the 8,700 Class Members given the general uncertainty surrounding all litigation and the risks specific to this case.

If this litigation proceeds, Defendant intends to continue to vigorously defend the claims, and Plaintiff and the Settlement Class will face legal challenges by Defendant, including challenges to merits of their claims, decertification, and an appeal on class certification. Any one of these challenges could significantly prolong the litigation at considerable expense to the Parties and potentially result in no recovery for the Class Members. Each of these phases of litigation presents uncertainty and risks, which the settlement allows the Parties to avoid.

Without this settlement, in order for members of the settlement classes to recover any statutory damages under the FCRA, they must not only prove that Defendant failed to comply with the disclosure and authorization provisions, but also that Defendant did so willfully. *See* 15 U.S.C. § 1681n(a). Although Plaintiff contends that the violations were willful, Defendant will contest the question of willfulness if the lawsuit is further litigated. *See, e.g., Schoebel v. Am. Integrity Ins. Co.*, 2015 WL 3407895, at *7 (M.D. Fla. May 27, 2015) (dismissing FCRA stand-alone disclosure case seeking statutory damages because alleged violation was not willful). And, absent the settlement, continued certification under the current class definition is not certain. Although Defendant denies liability and has asserted affirmative defenses to the claims, Defendant nevertheless recognizes, as Plaintiff does, the risks inherent in proceeding to trial.

### 5. The Settlement Agreement Is Fair in Light of the Possible Range of Recovery and Certainty of Damages.

The Agreement should be approved because the proposed settlement compares favorably to the limited range of damages available under the FCRA that could potentially be recovered at trial. In his Amended Complaint, Plaintiff seeks to recover compensation under 15 U.S.C. § 1681n(a)(1)(A), (2), and (3) for himself and the other Class Members consisting of (a) statutory damages of not less than $100.00 and not more than $1,000.00; (b) punitive damages, (c) attorney's fees and costs. However, as Section 1681n(a) of the FCRA indicates, proof of noncompliance with the technical requirements of the FCRA alone does not impose liability on a defendant. Recovery of damages under Section 1681n(a) is contingent on establishing that the defendant willfully failed to comply with the FCRA; negligent noncompliance is not sufficient. *Safeco v. Burr*, 127 S. Ct. 2201, 2215 (2007); 15 U.S.C. § 1681n(a). And, even if liability for willful noncompliance is established as Plaintiff believes, the determination as to the size of the award is left to the discretion of the jury, which may return an award of no damages as a possible outcome.

The settlement proposed in the Agreement secures a monetary payment to each Settlement Class Member in the amount of approximately $33.00. Class Counsel believes that the proposed payment to each member of the Class is a very good settlement, providing more relief to Class Members than other recently approved settlements. The district court in *Hillson v. Kelly Services Inc.*, summarized the results of such settlements as follows:

> The results counsel achieved for the class were good. The gross recovery (i.e., recovery before fees and other expenses are taken from the fund) is $30.00 per Class Member (on average). This appears to be in line with the average per-class-member gross recovery in other settlements of stand-alone disclosure claims. See Moore v. Aerotek, Inc., No. 2:15-CV-2701, 2017 WL 2838148, at *4 (S.D. Ohio June 30, 2017) (per-capita gross recovery of $25.00 in case involving a stand-alone disclosure claim and a claim that employer did not provide a copy of consumer report), report and recommendation adopted, 2017 WL 3142403 (S.D. Ohio July 25, 2017); Lagos v. Leland Stanford Junior Univ.,

> No. 15-CV-04524-KAW, 2017 WL 1113302, at *2 n.1 (N.D. Cal. Mar. 24, 2017) (per-capita gross recovery of $26); Lengel v. HomeAdvisor, Inc., No. CV 15-2198, 2017 WL 364582, at *9 (D. Kan. Jan. 25, 2017) (citing FCRA disclosure cases with per-capita gross recoveries of $33.00, $40.00, and $44.00).

2017 WL 3446596, at *3 (E.D. Mich. Aug. 11, 2017).[1]

The settlement proposed in the Agreement falls within the reasonable range of possible recovery for members of the settlement classes. "A proposed settlement need not obtain the largest conceivable recovery for the class to be worthy of approval; it must simply be fair and adequate considering all the relevant circumstances." *Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632, 649 (N.D. Tex. 2010). Balancing the risk that liability cannot be established against Defendants for willful violations of the disclosure and authorization provisions of the FCRA against the range of possible recovery of damages supports settlement.

### 6.     Settlement Class Counsel and the Parties Support the Settlement.

As evidenced by the Agreement itself and this Motion in which the Defendant does not oppose approval of the settlement, the terms of the settlement as proposed have the obvious support of Plaintiff, Class Counsel, and Defendant. Plaintiff and Defendant believe, based on their independent assessments, that settlement is in their respective best interest. Plaintiff and Settlement Class Counsel have likewise concluded that the proposed settlement is in the best interest of the Class.

Furthermore, the Parties anticipate that the settlement will receive broad support from putative Class Members, especially considering that each individual member will receive a settlement check that is reasonable and consistent in the context of class action litigation. Even if applicants in the

---

[1] *see also See, e.g., Fosbrink v. Area Wide Protective*, No. 8:17-cv-1154 ($39 gross recovery); *Speer v. Whole Food Mkt. Grp., Inc.,* No. 8:14-CV-3035-T-26TBM, Document 68,(M.D. Fla. January 1, 2016)(final Order entered by Judge Lazzara approving $40 gross recovery for FCRA class members); *Landrum v. Acadian Ambulance Serv., Inc*., No. 4:14-cv-01467 (S.D. Tex. June 29, 2015) (Doc. 37) (granting final approval of settlement that provides $10 per class member); *Fernandez v. Home Depot, U.S.A. Inc*., No. 8:13-cv-00648-DOC (C.D. Cal. April 20, 2015) (Doc. 59) (class members to receive $10.00 in FCRA class case).

settlement class were able to overcome the difficulties of financing and finding legal counsel to pursue their relatively small individual claims, few members of the settlement classes are likely to be inclined toward pursuing their individual claims.

Therefore, it is unlikely that settlement Class Members will oppose releasing their pertinent FCRA claims that in reasonable probability they never intended to bring, or were unaware to have possessed. Even if any putative Class Member does not agree with the terms of the proposed settlement, he or she is protected by the right to opt out of the proposed class settlement and retain his or her individual FCRA claims against Defendant rather than participating in the settlement. The Parties believe that the Agreement represents a fair, reasonable, and adequate settlement. Consequently, the support of Plaintiff, Settlement Class Counsel, the putative Class Members of each settlement class, and Defendants weighs in favor of approving the settlement.

**B.     The Notice Of Class Action Settlement Should Be Approved Because The Form And Manner Of The Notice Satisfies The Requirements of Rule 23 And <u>Due Process</u>.**

The Notice of Class Action Settlement to be mailed to the Settlement Class is appended as Exhibit C. Importantly, Judge Honeywell recently approved a similar notice in another FCRA case, styled *Gross v. Advanced Disposal Services, Inc.,* No. 8:17-cv-1154 (M.D.Fla.) (D.E. 94, p. 3) ("Similarly, the Court finds that the Notice of Proposed Class Action Settlement meets the requirements of Federal Rules of Civil Procedure 23(c)(2)(B) and (e)(1) and comports with due process by clearly notifying class members of their rights, as well as a reasonable timeframe within which to exercise those rights.").

The proposed notice plan is reasonable and provides the best notice practicable to the respective settlement classes. Under the Agreement, the Notice of Proposed Class Action Settlement will be sent to each Class Member via first class mail to the last known addresses of Class Members

based on information contained in Defendant's records or obtained by the third-party Settlement Administrator. *See* Ex. A, Agreement.

Notice by mail is recognized as sufficient to provide due process to known affected persons as long as the notice is "reasonably calculated . . . to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *DeHoyos*, 240 F.R.D. at 296 (sending notice by mail is preferred when all or most Class Members can be identified). The Agreement also includes provisions to ensure that a reasonable effort is made to locate members whose notices are returned undelivered and to re-send the Notice of Proposed Class Action Settlement to these persons to the extent possible. Because the Notice of Proposed Class Action Settlement communicates the essential terms of the proposed settlement in a manner that complies with Rule 23(c)(2)(B) and due process, the Court should approve its distribution to the respective settlement classes.

### III.   MOTION FOR PRELIMINARY CLASS CERTIFICATION

As part of preliminary approval of the settlement, the Parties respectfully seek certification of the Settlement Class for the purposes of settlement.

#### A.   The Settlement Class Meets the Requirements of Rule 23(a)

A court can certify a settlement class where the proposed class and proposed class representatives meet the four prerequisites in Federal Rule of Civil Procedure 23(a) – numerosity, commonality, typicality, and adequacy of representation – and one of the three requirements of Federal Rule of Civil Procedure 23(b). Here, pursuant to Rules 23(a) and 23(b)(3), Named Plaintiff seeks certification of a defined settlement class (the "Disclosure Form Settlement Class") to consist of:

> Background Check Class: All natural persons in the United States who: (1) were the subject of a consumer report that was procured by Trace Staffing (or

11

caused to be procured by Trace Staffing) from Employment Screening Service for an employment purpose; (2) to whom Trace Staffing presented the disclosure form attached to Plaintiff's First Amended Class Action Complaint before procuring that report; (3) within two years of the filing of this lawsuit through the date the Class list is prepared.

Certification of a class under Federal Rules of Civil Procedure 23(a) and (b) is subject to a slightly different analysis where certification is contested than where, as here, a proposed settlement is under review. The proposed Settlement Class here meets the Rule 23(a) prerequisites of numerosity, commonality, typicality, and adequacy of representation

### 1. **Numerosity**

The proposed class of approximately 8,700 individuals is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The Court may find the numerosity factor satisfied if the Court concludes it would be difficult, inconvenient, and wasteful to attempt to join numerous plaintiffs into one case, using permissive joinder. "While Rule 23 does not specify an exact number necessary to satisfy numerosity, the Eleventh Circuit has indicated that having more than 40 class members is generally enough to satisfy the rule." *Klewinowski v. MFP, Inc.,* 2013 U.S. Dist. LEXIS 130591, at *4 (No. 8:13-cv-1204-T-33TBM, M.D. Fla. Sept. 12, 2013) (*citing Cox v. Am. Cast Iron Pipe Co.,* 784 F.2d 1546, 1553 (11th Cir. 1986)). Thus, numerosity is satisfied.

### 2. **Commonality**

The United States Supreme Court recently clarified that to satisfy the commonality requirement of Rule 23(a), the plaintiff must "demonstrate that the class members 'have suffered the same injury.'" *Wal-Mart Stores, Inc. v. Dukes,* 131 S. Ct. 2541, 2551 (2011) (*citing Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147 (1982)). In the instant case, the essence of Named Plaintiff's claims posit that Defendant failed to provide sufficient notice to class members,

pursuant to the requirements of the FCRA. Determining liability on these claims will require resolving numerous common questions of fact, including, but not limited to: (1) whether Defendant's FCRA disclosure satisfies the notice and authorization requirements under 15 U.S.C. § 1681b(b)(2)(A); and, (2) whether Defendant acted willfully in its failure to satisfy the requirements under the FCRA, which is relevant to damages. *See* 15 U.S.C. § 1681n and § 1681s; *see also Singleton v. Domino's Pizza, LLC*, 976 F. Supp. 2d 665, 675 (D. Md. 2013) (granting final certification for the Settlement classes under the FCRA).

The claims of the Settlement Class members are based on the same set, or a similar set, of operative facts. An award of damages to one Settlement Class member for a violation of the FCRA would justify the award of damages to the remaining hires in the same Settlement Class on the same legal theory, subject to the same defenses. Even if the award of damages were to vary slightly among class members (which it does not), the Eleventh Circuit has held that the presence of individualized damages does not prevent a finding of commonality. *See Allapattah Serv., Inc. v. Exxon Corp.*, 333 F. 3d 1248, 1261 (11th Cir. 2003). Accordingly, the requirement of commonality has been met.

### 3. **Typicality is Satisfied**

Under Federal Rule of Civil Procedure 23(a)(3), typicality does not require identical claims:

> The focus of Rule 23(a)(3) typicality is whether the class representative's interests are aligned with the proposed class so as to stand in their shoes for the purposes of the litigation and bind them in a judgment on the merits. The typicality requirement is generally met if the class representative and the class members received the same unlawful conduct, irrespective of whether the fact patterns that underlie each claim vary.

"A class representative must possess the same interest and suffer the same injury as the class members in order to be typical under Rule 23(a)(3). Typicality measures whether a sufficient

13

nexus exists between the claims of the named representatives and those of the class at large." *Rosario-Guerro*, 265 F.R.D. at 627 (*citing Busby v. JRHBW Realty, Inc.*, 513 F. 3d 1314, 1322 (11th Cir. 2008).

In this case, the legal theory underlying the claims of the putative class members is virtually identical to the Named Plaintiff's FCRA claims. Here, all of the claims are based on a substantially similar, if not identical, set of facts and are grounded in the same legal theories; namely, that Defendant's FCRA form(s) failed to satisfy the requirements under the FCRA. The Class Representative's claims are "typical" of the Class and, consequently, the typicality requirement of Rule 23(a)(3) has been met. *See* FED. R. CIV. P. 23(a)(3).

### 4. **Adequacy of Representation**

The fourth requirement of Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4). "This requirement 'encompasses two separate inquiries: (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action.'" *Battle v. Law Offices of Charles W. McKinnon, P.L.*, 2013 U.S. Dist. LEXIS 29263, at *10 (S.D. Fla. Mar. 5, 2013) (*citing Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1323 (11th Cir. 2008).

Here, the adequacy-of-representation requirement has been met. The Named Plaintiff, Mohammed Harake, is adequate given that his interests are equivalent to those of the Settlement Class. There is also no obvious conflict of interest between the Named Plaintiff and the Settlement Class. The Named Plaintiff has the same interest as the Settlement Class members in prosecuting their claims and, in fact, participated actively in the FCRA litigation.

With respect to Class Counsel, the undersigned has extensive class and collective action experience, as detailed in the attached declaration of Brandon J. Hill of Wenzel Fenton Cabassa, P.A. When, as here, the Parties are represented by counsel who have significant experience in class-action litigation and settlements and in FCRA cases, and no evidence of collusion or bad faith exists, the judgment of the litigants and their counsel concerning the adequacy of the settlement is entitled to deference.

### B. The Settlement Class Meets the Requirements of Rule 23(b)(3)

Under Rule 23(b)(3), a proposed class must satisfy two factors: predominance and superiority. As discussed below, the proposed Settlement Class meets the requirements of Federal Rule of Civil Procedure 23(b)(3) because common questions of law or fact between the Parties predominate over individual questions, and class action is the best available method for adjudicating this controversy.

#### 1. Predominance

Predominance is governed by an analysis of whether liability may be resolved on a class-wide basis. "Under Rule 23(b)(3) it is not necessary that all questions of law or fact be common, but only that some questions are common and that they predominate over the individual questions . . . In essence, the Court must determine whether there are common liability issues which may be resolved efficiently on a class-wide basis." *Battle*, 2013 U.S. Dist. LEXIS 29263, at *10-11 (*internal citations omitted*).

Here, common questions of law and fact predominate. The central common issues in this case are whether Defendant's FCRA forms satisfy the notice and authorization requirements under the FCRA and whether Defendant complied with the FCRA's pre-adverse requirements and, if not, whether Defendant's failure to comply with the FCRA was willful. These common issues are

15

the most important issues in the case, and can be decided uniformly for all Settlement Class members in broad strokes. Thus, class certification is appropriate.

### 2. **Superiority**

The Court must also consider whether the superiority requirement has been met. In making this determination, the Court may consider, among other factors: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action. FED. R. CIV. P. 23(b)(3).

Superiority is met with regard to these first two factors under the Federal Rule of Civil Procedure 23(b)(3) analysis. Given the low amount of damages for members of the Settlement Class in this case and the fact that there are common issues shared by the Settlement Class members, the individual interest in controlling the case through separate actions is relatively low.

Furthermore, concentrating the litigation and settlement of this action in this forum is in the interest of judicial economy. "Separate actions by each of the class members would be repetitive, wasteful, and an extraordinary burden on the courts." *In re Checking Account Overdraft Litig.,* 275 F.R.D. 666, 679 (S.D. Fla. 2011). Rather than having separate lawsuits filed in different parts of the country in different courts by different putative class members, the Settlement Agreement -- if approved -- will instead allow all claims by the Settlement Class to be resolved in one case. Finally, under the Federal Rule of Civil Procedure 23(b)(3) superiority analysis, since the Court is asked to certify this action for settlement purposes only, to approve the Settlement Class it would not need to determine whether the class would be manageable for litigation purposes. *Kizer v. Summit Partners, L.P.*, 2012 U.S. Dist. LEXIS 63795, at *21 (E.D. Tenn. May

7, 2012) (approving class settlement under superiority analysis where "given that this matter did not go to trial, concerns regarding management of the class action are minor").

## IV. CONCLUSION.

**WHEREFORE**, Plaintiff respectfully requests that the Court enter the proposed Preliminary Approval Order attached as Exhibit A, approving the Parties' Settlement Agreement, attached as Exhibit B.

### CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 3.01(g)

Prior to filing this Motion, Plaintiff's counsel conferred with Defendant's counsel pursuant to Local Rule 3.01(g). Plaintiff has authorized to state Defendant has no objection to this motion.

DATED this 22nd day of January, 2020.

Respectfully submitted,

*/s/ Brandon J. Hill*
**Brandon J. Hill**
Florida Bar No. 37061
**WENZEL, FENTON, CABASSA, P.A.**
1110 N. Florida Ave., Suite 300
Tampa, Florida 33602-3300
Telephone: 813.224.0431
Facsimile: 813.229.8712
bhill@wfclaw.com
*Attorneys for Plaintiff*

### CERTIFICATE OF SERVICE

I hereby certify that on this 22nd day of January, 2020, I caused a true and correct copy of the foregoing document to be filed with the Court using the Clerk's CM/ECF system, which will then send a notice of electronic filing to all Counsel of Record.

*/s/ Brandon J. Hill*
**Brandon J. Hill**

17